IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TOBY RHOADS,                                      05-CV-6162-BR

            Plaintiff,                            OPINION AND ORDER

v.

JOANNE B. BARNHART, Commissioner,
Social Security Administration,

            Defendant.


KATHRYN TASSINARI
MARK MANNING
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, OR  97401
(541)686-1969

            Attorneys for Plaintiff

KAREN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1053

1 - OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2272

      Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Toby Rhoads seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's protective application for Supplemental Security Income benefits (SSI).

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

    Defendant awarded Plaintiff disability benefits beginning July 1, 1998.  Defendant determined Plaintiff's disability ended in October 2002 and terminated Plaintiff's benefits on December 31, 2002.  Plaintiff did not appeal that determination.

    Plaintiff filed a second application for SSI on October 10, 2003, alleging disability beginning July 1, 1998.  The application was denied initially and on reconsideration.  An

2 - OPINION AND ORDER

Administrative Law Judge (ALJ) held a hearing on October 20, 2004, to address whether Plaintiff had been disabled since December 31, 2002.  Plaintiff, who was represented by counsel, and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on November 24, 2004, in which he found Plaintiff was not disabled after December 31, 2002.  On April 4, 2005, the Appeals Council denied Plaintiff's request for review.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on August 7, 1978, and was 26 years old at the time of the hearing.  Tr. 56, 323.[1]  He completed school through the eighth or ninth grade.  Tr. 17, 81.  Plaintiff does not have any past relevant work other than working in a sheltered workshop through the SWEEPS vocational rehabilitation program in January 1998 and December 2000.  Tr. 78.

When Plaintiff applied for SSI, he asserted he has "mental illness - [he] cannot stay on the job - [he] need[s] help with [his] job and extra training - [he is] late a lot and miss[es] a

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer on November 22, 2004, are referred to as "Tr."

3 - OPINION AND ORDER

lot because [he] just [doesn't] want to get up in the morning."
Tr. 77-78.

The ALJ acknowledged Plaintiff has the severe psychological
impairments of a personality disorder, a cognitive disorder, an
affective disorder, and a possible substance abuse disorder, but
the ALJ denied benefits based on the conclusion that Plaintiff
retains the residual functional capacity (RFC) to perform work
that is limited to simple, routine, repetitive tasks and that
requires limited interaction with the public at jobs that exist
in a significant number in the national economy, such as
custodial cleaner, garment sorter, and small-products assembler.

Except when noted below, Plaintiff does not challenge the
ALJ's summary of the medical evidence. Plaintiff, however,
contends the ALJ improperly rejected the findings of Charlotte
Higgins-Lee, Ph.D. and David Truhn, Psy.D., P.C., examining
psychologists.

After carefully reviewing the medical records, this Court
adopts the ALJ's summary of the medical evidence. *See* Tr. 18-22.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this
burden, a claimant must demonstrate the inability "to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.


## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential process for determining whether a claimant is disabled within the

meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
*See also* 20 C.F.R. § 416.920.  There is no dispute in this case
regarding the first three steps.

For purposes of Step Four, the Commissioner must determine
whether the claimant retains the residual functional capacity
(RFC) to perform work he has done in the past.  *Yuckert*, 482 U.S.
at 141-42.  *See also* 20 C.F.R. § 416.920(e).  The claimant's RFC
is an assessment of the sustained work-related activities the
claimant still can do on a regular and continuing basis despite
the limitations imposed by his impairments.  20 C.F.R.
§ 416.945(a).  *See also* Social Security Ruling 96-8p.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Yuckert*, 482 U.S. at 141-42.  *See also*
20 C.F.R. § 416.920(e), (f).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Yuckert*, 482 U.S. at
141-42.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).  If the Commissioner meets this burden, the claimant is
not disabled.  20 C.F.R. § 416.920(f)(1).


**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) rejected the
findings of Drs. Higgins-Lee and Truhn and (2) omitted

Plaintiff's limitations identified by Dr. Truhn from the RFC
assessment and his hypothetical to the VE.

## I.   The ALJ Did Not Improperly Reject the Findings of Dr. Higgins-Lee.

The ALJ must give specific, legitimate reasons supported by
the evidence for rejecting the opinion of an examining,
nontreating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th
Cir. 1995). The ALJ must provide clear and convincing reasons to
reject the uncontradicted opinion of an examining physician. *Id*.
at 830. If an examining physician's opinion is contradicted by
another physician, "the Commissioner may not reject this opinion
without providing 'specific and legitimate reasons' supported by
substantial evidence in the record for so doing." *Id*. (citation
omitted).

Dr. Higgins-Lee performed psychological examinations
of Plaintiff on July 24, 1998, and March 29, 2004. Tr. 125-45,
236-40. In her first psychological evaluation, Dr. Higgins-Lee
administered a number of tests. She noted Plaintiff was in the
vocational rehabilitation program at SWEEPS, but that Plaintiff
might not be allowed to continue in the program because of "poor
attendance and ambivalence. Reportedly he prefers to stay at
home and play video games, but has phenomenal motor skills and is
talented in electronic assembly." Tr. 126. Dr. Higgins-Lee also
noted Plaintiff was "very slow and unmotivated" to take each
test, and, accordingly, "it [was] difficult to determine whether

7 - OPINION AND ORDER

he completed the test items to the best of his ability."
Tr. 127.

Dr. Higgins-Lee reported Plaintiff achieved a full scale IQ
score of 81 with a verbal IQ of 74 and a performance IQ of 94 and
noted the significant difference between the verbal and
performance IQ scores "can be an indication of brain
dysfunction." Tr. 128. Plaintiff's vocabulary was at a ninth-
grade level, but his reading comprehension was at a fifth-grade
level. Tr. 129. Dr. Higgins-Lee concluded Plaintiff would not
be able to work at a job that required reading comprehension,
math, and spelling above a fourth- or fifth-grade level.
Tr. 130. Dr. Higgins-Lee ruled out depression and attention
deficit disorder, but she found Plaintiff met the criteria for a
cognitive disorder NOS and Dependent Personality Disorder.
Tr. 130. Dr. Higgins-Lee opined Plaintiff was very immature for
his age, would need time to become "job ready," and would not be
capable of competitive work in the next twelve months. Tr. 130.

On March 29, 2004, Dr. Higgins-Lee performed a second
psychological evaluation on Plaintiff. Plaintiff reported he had
been homeless since 2002 and was living in a tent with a female
friend. Tr. 236. Plaintiff also stated he "hasn't been able to
stay at his adopted mother's house because she requires him to
look for work every day." Tr. 236. Dr. Higgins-Lee noted
Plaintiff had few social relationships other than with the woman

he lives with, and "he did not report any desire to find work."
Tr. 237. Dr. Higgins-Lee noted Plaintiff "does not have a very
high reading level," but she opined Plaintiff "appears to have
average intelligence and is able to live independently in a long-
term, probably illegal, camp site." Tr. 237. Dr. Higgins-Lee
administered tests and determined Plaintiff demonstrated the
ability to "do an elementary level of abstract thinking."
Tr. 238. Dr. Higgins-Lee also reviewed Plaintiff's past
psychological evaluations, work history with SWEEPS, and other
records and concluded Plaintiff had Borderline Intellectual
Functioning and Personality Disorder. Tr. 239. Dr. Higgins-Lee
opined, however,

> [Plaintiff] did not need extensive supervision,
> could follow multi-level commands and was not
> distracted at the work place. Therefore, he would
> be expected to understand and remember
> instructions. He could concentrate and pay
> attention and was persistent. His biggest
> problems would probably be motivation and
> attendance.

Tr. 239.

The ALJ did not reject Dr. Higgins-Lee's 1998 psychological
evaluation of Plaintiff. The ALJ, however, noted the disability
period at issue here was from December 31, 2002, forward.
Accordingly, the ALJ found Dr. Higgins-Lee's 2004 psychological
evaluation was more pertinent and provided specific and
legitimate reasons for giving Dr. Higgins-Lee's 2004 evaluation
more weight than her 1998 evaluation.

9 - OPINION AND ORDER

On this record, the Court concludes the ALJ did not err.

**II.  The ALJ Did Not Improperly Reject the Findings of Dr. Truhn.**

On July 14, 2004, Dr. Truhn conducted a psychological evaluation of Plaintiff.  Tr. 266-74.  Plaintiff reported he was "depressed most of the time" and had been "depressed several years since his last girlfriend left him."  Tr. 266.  Plaintiff reported he was unable to work "because he does not have a place to live[, . . .] is not able to get up in the morning[, and he] has a short attention span and poor concentration."  Tr. 268. Dr. Truhn administered several tests and noted Plaintiff had a full scale IQ of 88, a performance IQ of 104, and a verbal IQ of 77.  Tr. 269.  Dr. Truhn noted the difference between Plaintiff's verbal and performance IQ could indicate a cognitive disorder. Tr. 269.  Dr. Truhn also reported Plaintiff scored "in the borderline range on tests measuring mathematical ability and concentration, short-term memory, and knowledge of common sense reasoning."  Tr. 269.  She also stated Plaintiff scored in the "exceptionally superior range on tests measuring attention to detail, and the ability to sequence cards of social interaction." Tr. 270.  In addition, Dr. Truhn reported Plaintiff's "personality inventory is invalid, possibly indicating poor persistence, lack of concentration, difficulty following directions, and lack of motivation."  Tr. 271.

Dr. Truhn recommended Plaintiff participate in a structured

10 - OPINION AND ORDER

day-treatment program to facilitate his motivation, to interact with people in a supportive setting, and to receive treatment for depression. Tr. 272. Dr. Truhn also recommended Plaintiff continue to work with vocational rehabilitation services to get into a sheltered workshop. Tr. 272. Dr. Truhn opined Plaintiff's "prognosis is guarded. He has had what seems to be severe depression for an extended period of time, seemingly affecting his concentration and attention, his ability to complete activities of daily living, and interact with others. His response to medication and intensive day treatment program is yet unknown." Tr. 272.

The ALJ rejected Dr. Truhn's opinion and, for the reasons that follow, the Court concludes the ADL adequately provided specific and legitimate reasons for doing so. The ALJ noted Dr. Truhn based some of his evaluation on Plaintiff's report of being depressed for several years. Dr. Higgins-Lee, however, did not report any evidence or make a finding of depression in either of her psychological evaluations of Plaintiff. In addition, Dr. Truhn's opinion that Plaintiff was seriously limited in his ability to remember and to understand short and simple instructions and in his ability to understand and to remember detailed instructions was inconsistent with the conclusions reached by Dr. Higgins-Lee and with Plaintiff's history of vocational rehabilitation efforts with SWEEPS where Plaintiff

11 - OPINION AND ORDER

demonstrated the capacity to follow simple and multi-step instructions, to learn tasks quickly, and to work without extensive instruction.

On this record, therefore, the Court concludes the ALJ did not err when he rejected Dr. Truhn's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

**III. The ALJ's RFC Assessment and Step-Five Conclusions.**

Plaintiff contends the ALJ erred by omitting from the ALJ's RFC assessment and his hypothetical to the VE the limitations of Plaintiff identified by Dr. Truhn. As noted, however, the Court has found the ALJ did not err when he rejected Dr. Truhn's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

Accordingly, the Court concludes the ALJ did not err in his RFC assessment of Plaintiff nor in his hypothetical to the VE, both of which included consideration of Plaintiff's relevant and credible limitations.

<u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 21st day of March, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge